UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:22-CV-00127-FDW

| | |
|---|---|
| SHONDREA HOWARD, ) | |
| ) | |
| Claimant, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Claimant Shondrea Howard's ("Claimant") Motion for Summary Judgment and Memorandum in Support, (Docs. Nos. 11, 12), filed on September 14, 2022; Defendant Acting Commissioner of Social Security's (the "Commissioner") Motion for Summary Judgment and Memorandum in Support, (Docs. Nos. 14, 15), filed on November 14, 2022. Claimant, through counsel, seeks judicial review of an unfavorable administrative decision on her application for supplemental security income.

The motions are fully briefed and are now ripe for review. Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Claimant's Motion for Summary Judgment is DENIED; the Commissioner's Motion for Summary Judgment is GRANTED; and the Commissioner's decision is AFFIRMED.

**I. BACKGROUND**

On March 26, 2014, Claimant filed both a Title II application for a period of disability and disability insurance benefits, (Tr. 2665), and a Title XVI application for Supplemental Security Income ("SSI"). Id. Both applications alleged disability beginning May 24, 2013. (Tr. 210, 213). After her claims were denied both initially and upon reconsideration, Claimant requested a hearing

1

by an Administrative Law Judge ("ALJ"). (Tr. 210-11, 272-73). In March of 2017, Claimant appeared at a hearing before an ALJ and on March 27, 2017, the ALJ issued an unfavorable decision, finding Claimant not disabled under the Social Security Act (Tr. 130-63). After her claim was denied, Claimant filed a complaint in this Court, and the Commissioner consented to a remand for further proceeding. (Doc. No. 15). The ALJ held a second hearing on April 3, 2020, after which she issued another unfavorable decision, again finding Claimant was not disabled under the Social Security Act on March 17, 2021. (Tr. 2628-65).

During the five-step sequential evaluation process for determining whether an individual is disabled under the Social Security Act, the ALJ found at step one Claimant has not engaged in substantial gainful activity since May 24, 2013. (Tr. 2630). At step two, the ALJ found Claimant to have the following severe impairments: "mild" degenerative disc disease of the cervical spine, history of asthma, fibromyalgia, and obesity. (Tr. 2631). Assessing step three, the ALJ found Claimant had "mild limitations" in "understanding, remembering, or applying information;" "interacting with others;" "concentrating, persisting, or maintaining pace;" and "adapting or managing oneself." (Tr. 2634).[1] The ALJ determined that none of Claimant's impairments, nor any combination thereof, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 2639). Before proceeding to step four, the ALJ found Claimant

> ha[d] the residual functional capacity [("RFC")]to perform "light" work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to occasional climbing, frequent balancing, stooping, kneeling, crouching, and crawling. Furthermore, she is limited to frequent but not constant exposure to pulmonary irritants such as dust, fumes, odors, and gases.

---

[1] In addition to the new "B" criteria, the ALJ also considered the "B" criteria prior to the revision in 2017, since the period of adjudication includes prior to and after 2017. (Tr. 2634). The ALJ found that Claimant had "mild restriction" of activities of daily living, "mild difficulties" in "maintaining social functioning;" "mild difficulties" in "maintaining concentration, persistence or pace;" and no episodes of decompensation. (Id.).

2

(Tr. 2641). The ALJ found for step four that Claimant was able to perform past relevant work, not requiring the performance of work-related activities precluded by the Claimant's residual functional capacity. (Tr. 2663).

Assessing step five, the ALJ asked the vocational expert ("VE") whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity ("RFC"). (Tr. 2664). The VE testified that, given those factors, the individual would be able to perform the requirements of representative occupations such as a shipping and receiving weigher (DOT#222.387-074, SVP 2), a mail clerk non-postal (DOT#209.687-026, SVP 2), and a cashier II (DOT#211.462-010, SVP 2). (Tr. 2664-65). The VE testified that each occupation existed in significant numbers in the national economy, including 72,000 jobs, 57,000 jobs, and 1.2 million jobs respectively. (Tr. 2665). Accordingly, the ALJ concluded Claimant was not disabled as defined by the Social Security Act at any time during the alleged period of disability. (Id.).

Claimant's subsequent request for review by the Appeals Council was denied, and as a result, the ALJ's decision became the final decision of the Commissioner. (Tr. 1–6). Claimant has exhausted all administrative remedies and now appeals to this Court pursuant to 42 U.S.C. § 405(g).

**II. STANDARD OF REVIEW**

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richard v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court

3

Case 3:22-cv-00127-FDW   Document 16   Filed 06/21/23   Page 3 of 16

does not review a final decision of the Commissioner *de novo*. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). The court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). The Court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R.

§§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.2d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotation marks omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1566, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."

Monroe, 826 F.3d 176, 180 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429).

If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

Claimant alleges two assignments of error on appeal: (1) the ALJ's decision misstated evidence of the record and improperly cherry-picked facts supporting a finding of no disability while ignoring evidence pointing to a finding of disability; and (2) the ALJ erred in her evaluation of Claimant's medical opinion evidence. For the reasons discussed below, the Court disagrees and finds both assignments of error without merit.

**A. The ALJ's Discussion of the Record**

Claimant alleges the ALJ erred by focusing on irrelevant evidence to conclude that Claimant is not disabled, while ignoring evidence to the contrary. In support of her assertion, Claimant argues: (1) the ALJ's evaluation of Claimant's Interstitial Cystitis ("IC") ignored and misstated evidence, such as a urinalysis and a piece of a treatment note by Dr. Todd Adams; and (2) the ALJ's evaluation of Claimant's mental impairments was improper because it ignored a piece of evidence analyzed in her Medicaid decision.

**(1) The ALJ's Evaluation of Claimant's IC**

Claimant argues the ALJ improperly ignored and misstated evidence of the record in her IC analysis. The Fourth Circuit has held the ALJ should discuss the evidence and build an accurate and logical bridge from the evidence to her conclusion. Monroe v. Colvin, 826 F.3d 176, 189–91 (4th Cir. 2016). However, the ALJ is not required to discuss *every* piece of evidence in her analysis. Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865–66 (4th Cir. 2014); McCoy v. Saul, No. 3:19-CV-00484-GCM, 2021 WL 1187093, at *2 (W.D.N.C. Mar. 29, 2021).

In her determination that Claimant's IC was not "severe," the ALJ considered reports from multiple medical professionals who examined Claimant regarding her IC symptoms and analyzed both their opinions as well as their treatment notes. (Tr. 2631-33, 2651-52). The ALJ acknowledged some of Claimant's clinical signs and findings could suggest the diagnosis of interstitial cystitis; however, the ALJ determined this impairment was nonetheless "not-severe." (Tr. 2632). Although the ALJ did not specifically discuss a particular piece of a treatment note from Dr. Adams or Claimant's independent interpretation of a urinalysis in the analysis, as mentioned above, an ALJ need not specifically discuss every piece of evidence in her decision.[2] see Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014).

The ALJ explained over multiple pages the medical evidence available including: (1) Dr. Adams' medical report and treatment notes where he diagnosed Claimant with IC despite Claimant's lack of urinary symptoms; (2) multiple medical opinions that were based entirely on Claimant's subjective complaints and self-reports; and (3) a pelvic exam. (Tr. 2632; Exhibits 32F; 34F). Further, the ALJ noted numerous inconsistencies with the medical evidence. For example,

---

[2] Claimant further alleges the ALJ misstated evidence of the record by not crediting the urinalysis as "objective" medical evidence of her IC. However, Claimant's independent interpretation of the May 2014 urinalysis is based on internet research. Thus, the ALJ did not misstate the record because the urinalysis is not "objective medical evidence."

Claimant contends her IC symptoms began when she was fifteen-years old, but consistently denied urinary frequency, dysuria, and hesitancy during her genitourinary assessments from November 2014 through January 2015. (Tr. 2632; Exhibit 48F). Accordingly, the ALJ's conclusion that Claimant's IC was not severe was supported by substantial evidence.

### (2) ALJ's Evaluation of Claimant's Mental Impairments

Next, Claimant argues the ALJ erred in concluding Claimant's mental impairments were "not severe," because she ignored evidence that was utilized in her Medicaid decision. However, the Court disagrees.

The ALJ thoroughly discussed the relevant medical evidence regarding Claimant's mental impairments and noted inconsistencies in the findings and Claimant's limited mental health treatment to reach the conclusion that Claimant's mental impairments were not severe. (Tr. 2633-35). Although the ALJ did not discuss one computerized neuropsychiatric test, the ALJ's thorough discussion of the severity of Claimant's mental impairments over *six pages* of analysis is supported by substantial evidence. Namely, the ALJ cited reports from several of Claimant's medical providers who consistently noted Claimant's mental status was within normal limits in her psychiatric observations and examinations. (Tr. 2663; Exhibits 5E, 1F-71F). For example, treatment notes from Dr. Nguyen in 2019 show Claimant had "a positive attitude, normal memory, affect, and judgment." (Tr. 2639; Exhibit 71F). The ALJ further observed Claimant's limited mental health treatment did not reflect her mental limitations alleged after January 2018. (Tr. 2639). For instance, Claimant had no records of any inpatient psychiatric admissions and limited contact with therapists and psychiatrists. (Id.). Therefore, the ALJ's determination that Claimant's mental impairments were not severe was proper and is supported by substantial evidence.

Additionally, the ALJ adequately addressed the Medicaid decision relating to Claimant's mental impairments. Claimant relies on Woods v. Berryhill, 888 F.3d (686) (4th Cir. 2018), to argue that her Medicaid decision was entitled to substantial weight. Under Woods, Medicaid decisions are typically entitled to "substantial weight," "[b]ecause the purpose and evaluation methodology of both programs are closely related." 888 F.3d at 692 (citing Bird v. Comm'r of SSA, 699 F.3d 337, 343 (4th Cir. 2012)). However, as the ALJ correctly pointed out, the Woods court also acknowledged that "[A]n ALJ may deviate from this default rule and accord [a Medicaid] disability decision less than 'substantial weight' if 'the record before the ALJ clearly demonstrates that such a deviation is appropriate.'" 888 F.3d at 692. In doing so, the ALJ "must give persuasive, specific, valid reasons for doing so that are supported by the record." Id. (quoting McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002)).

After properly addressing the Woods standard, the ALJ here provided specific evidence in support of her decision to give Claimant's October 2014 Medicaid decision less than substantial weight. For example, the ALJ stated that at the time of the Medicaid decision, Claimant had a personal injury claim pending, had been denied long-term disability benefits, and the hearing officer did not have the benefit of the longitudinal record. (Tr. 2663). Additionally, the ALJ noted inconsistencies with Claimant's activities at the time of the Medicaid decision including evidence that showed Claimant was pursuing a bachelor's degree, was dating, was going home to visit with family and friends, and was increasing her exercise to include walking and yoga following the end of her personal injury lawsuit trial. (Id.). Further, Claimant had limited mental health treatment and consistently has had within normal limit psychiatric observations and examinations by several of her providers. (Tr. 2663; Exhibits 5E, 1F-71F). Thus, substantial evidence supports the ALJ's decision.

Moreover, even if the ALJ had made any error assessing the severity of Claimant's IC or mental impairments, any error at this step was harmless because the ALJ found multiple severe impairments, including mild degenerative disc disease, history of asthma, fibromyalgia, and obesity, and proceeded through the subsequent steps in the evaluation process. (Kirkpatrick v. Kijakazi, No. 1:20-cv-255, 2022 WL 392505 (W.D.N.C. Feb. 7, 2022) (finding an ALJ's failure to address an impairment at step two was harmless where the ALJ found at least one severe impairment and proceeded through the steps in the sequential evaluation process). This Court has held "an ALJ's failure to list a particular impairment as 'severe' during the step-two analysis does not require remand so long as the sequential evaluation continues and the functional effects of any absent impairment are appropriately examined and considered during subsequent steps." Torres v. Colvin, No. 1:14-cv-00007-RLV, 2016 WL 54933, at *5 (W.D.N.C. Jan. 5, 2016).[3] Thus, any error in assessing the severity of Claimant's IC or mental impairments was harmless because the ALJ properly accounted for all of Claimant's impairments, both severe and non-severe, at all steps of the sequential analysis and appropriately afforded limitations related thereto in the residual functional capacity finding.

**(3) The ALJ Evaluations of the Medical Opinions**

Claimant next contends the ALJ did not give sufficient weight to certain medical opinions regarding her fibromyalgia. Specifically, Claimant argues the ALJ erred by: (1) applying the

---

[3] See also Smith v. Colvin, No. 1:12-CV-00285-MOC, 2014 WL 1203282, at *7 (W.D.N.C. Mar. 24, 2014) (holding that error was harmless where "remand would not lead to a different result"). See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988); see also Morgan v. Barnhart, 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished) (applying harmless error doctrine in context of Social Security case); Dover v. Astrue, No. 1:11cv120, 2012 WL1416410, at * 5 (W.D.N.C. Mar. 19, 2012) (Howell, Mag. J.) (unpublished); Clore v. Colvin, No. 2:13–CV–00023–FDW, 2014 WL 294640, at *4 (W .D.N.C. Jan. 27 2014) (Whitney, C.J.) (unpublished); Darby v. Colvin, No. 1:12–CV–00295–MR–FDW, 2013 WL 4509662, at *5 (W.D.N.C. Aug. 23, 2013) (Whitney, C.J.).

incorrect legal standard when determining Dr. Lapp's opinion was not entitled to controlling weight, (2) failing to evaluate the factors set out in the regulation when determining the proper weight of Dr. Lapp's opinion, and (3) insufficiently weighing the opinion of Dr. Braunstein.[4]

Relying on Arakas v. Comm'r of Soc. Sec., 983 F.3d 83 (4th Cir. 2020), Claimant argues the ALJ committed reversible error by improperly evaluating Dr. Lapp's opinion. Specifically, Claimant argues the ALJ's analysis "applied the incorrect legal standard" when determining Dr. Lapp's opinion was not entitled to controlling weight as a treating physician and failed to properly address the Arakas factors when deciding the proper weight of Dr. Lapp's opinion. (Doc. 12. p. 12). In response, the Commissioner argues the ALJ properly evaluated Dr. Lapp's medical opinions and her decision to afford it little weight is supported by substantial evidence.

In Arakas, the Fourth Circuit held that the ALJ's decision not to afford controlling or great weight to a treating physician's opinion was legally insufficient where the ALJ discredited the medical opinion regarding Claimant's fibromyalgia because of "lack of substantial support from the other objective evidence of record." 983 F.3d at 106. The court explained that substantial support is not necessary for according controlling or great weight to a treating physician's opinion for this particular disease. Id. at 107. Rather, the opinion must be given controlling weight unless it is based on medically unacceptable clinical or laboratory diagnostic techniques or is contradicted by the other substantial evidence in the record. Id.

For all claims filed before March 27, 2017, as here, the Fourth Circuit follows the treating physician rule, which requires that "ALJs give controlling weight to treating physician's opinion

---

[4] During the discussion of the medical opinions, Claimant also challenges the weight afforded to the workplace accommodation letter submitted by Michael Thomas, M.D. in 2013. However, the ALJ noted that Dr. Thomas's opinion regarding Claimant's work-related stress in her "current" job was not supported by his treatment notes and appeared to be based entirely on Claimant's own subjective reports, including language like "she feels," which is subjective and not a medical opinion. (Tr. 2661-62); see Johnson v. Barnhart, 434, 658 F.3d 650 (4th Cir. W. Va. 2005)

11

on the nature and severity of the impairment if that opinion is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the record." Sexton v. Kijakazi, No. 5:20-CV-188-DCK, 2022 WL 3008436, at *6 (W.D.N.C. July 28, 2022) (citing Triplett v. Saul, 860 F. App'x 855, 863 (4th Cir. 2021)). However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Arakas, 983 F.3d at 107 (4th Cir. 2021). Additionally, in evaluating and weighing medical opinions that are not entitled to controlling weight under the treating physician rule, an ALJ must consider: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527(c)); see also Kempton v. Kijakazi, No. 1:20-CV-00114-MR, 2021 WL 5242886, at *5 (W.D.N.C. Nov. 10, 2021).

Here, substantial evidence supports the ALJ's decision to not give controlling weight to Dr. Lapp's opinion. The ALJ explained her decision to not give Dr. Lapp's opinion controlling weight resulted from inconsistencies with other substantial evidence in the record. In her analysis, the ALJ considered numerous treatment reports from medical professionals who examined Claimant's fibromyalgia symptoms. Diagnoses from several of Claimant's treating physicians contradicted much of their supporting treatment notes as well as Claimant's presentation during exams. For instance, Dr. Park diagnosed Claimant with Fibromyalgia in 2014 despite observing Claimant's presentation was "pleasant, well-developed, well-nourished, well-groomed, and in no acute distress." (Tr. 2649). Further, in that same visit with Dr. Park, Claimant even stated she "did not know whether she believes she has this fibromyalgia disorder." (Tr. 2648).

Additionally, the ALJ considered Claimant's ability to engage in daily activites that further contradicted a finding that her fibromyalgia was disabling. For example, the ALJ referenced Claimant was pursuing a Bachelor's in psychology, shoplifting (with larceny charges in 2015 and 2016, that were later dismissed), exercising, and doing yoga at the time Dr. Lapp's opinion was issued. (Tr. 2662). Further, the ALJ noted Claimant "stood to have a secondary gain from Dr. Lapp's independent medical evaluation," as she had a personal injury case pending. (Id.) Notably, the ALJ observed that after Claimant's personal injury trial was complete, her complaints decreased dramatically and primarily focused on weight loss. (Id.; Exhibits 1F-71; hearing testimony).

Ultimately, the ALJ concluded Dr. Lapp's opinion could not be afforded controlling weight because the opinion was inconsistent with other substantial evidence in the record, regardless of the existence of medically acceptable clinical and laboratory diagnostic techniques supporting the opinion. Unlike the ALJ in Arakas, who relied on the *lack* of substantial support in weighing the medical opinions, the ALJ in this case instead relied on ample inconsistencies with other substantial evidence in the record in her determination. Further, the ALJ did not discredit Claimant's subjective complaints while relying on objective evidence, instead she discredited them because of inconsistent evidence.[5] Thus, unlike Arakas, in this case the ALJ properly found the opinion is contradicted by other substantial evidence in the record, which supported a finding that together, Claimant's both severe and non-severe impairments were not disabling and that she could function within the limits of her residual functional capacity. (Tr. 2652, 2662).

---

[5] Claimant also argues, in reliance on the Arakas court, that the ALJ's mention of Claimant's negative MRI constitutes the same objective evidence the Arakas court held an ALJ should not consider in evaluating fibromyalgia. However, this assertion is without merit. The ALJ mentioned objective imaging findings in her discussion of evidence of the record; however, in contrast to Claimant's assertions, the ALJ did not indicate in the opinion that it played a "chief," if any, role in her decision to discredit Claimant's subjective complaints. Arakas, 983 F.3d 83, 97 (4th Cir. Dec. 14, 2020) (finding the ALJ's discounting of Claimant's subjective complaints improper where the ALJ's opinion indicated that the lack of objective medical evidence was his "chief," if not definitive, reason for discounting the complaints).

As for Claimant's next contention that even if Dr. Lapp's medical opinion was not entitled controlling weight, it should have been accorded substantial weight based on the factors listed in the regulation, the Court disagrees. While the ALJ is "not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion . . . it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." Sexton v. Kijakazi, No. 5:20-CV-188-DCK, 2022 WL 3008436, at *6 (W.D.N.C. July 28, 2022) (quoting Dowling v. Comm'r of SSA, 986 F.3d 377, 385 (4th Cir. 2021)).

Here, the ALJ adequately assessed the factors in weighing Dr. Lapp's opinion. First, the ALJ considered the examining relationship by discussing Dr. Lapp's role as a medical examiner. (Tr. 2662). Second, the ALJ considered the treatment relationship between Dr. Lapp and Claimant by observing that Dr. Lapp was consulted and referred by Claimant's personal injury attorney after her motor vehicle accident in 2013, for "presumably the purpose of assisting in establishing a prima fascia personal injury case." Id. Third, the ALJ considered the supportability of the physician's opinion, taking into consideration each of Dr. Lapp's findings, other than that of fibromyalgia, and noting several irregularities with his conclusions. For example, the ALJ acknowledged that Dr. Lapp noted in his findings:

> [T]he claimant reported widespread pain, a cognitive dysfunction, despite her assertions that she is pursuing a Bachelor's degree in psychology, a sleep disorder, even though her polysomnography test was normal, irritable bowel syndrome, which she takes no medication, interstitial cystitis not definitively diagnosed with objective evidence, restless leg syndrome, migraine headaches, with a negative MRI of the brain and no indication of sensitivity to light or sound, reactive depression and anxiety, with minimal treatment.

(Tr. 2662). Fourth, the ALJ found Dr. Lapp's medical opinion's both internally inconsistent and also inconsistent with the record, as the Court has already discussed. (Tr. 2635, 2652, 2662). Fifth,

14

the ALJ considered whether the physician is a specialist, noting that Dr. Lapp is a specialistic in internal medicine and pediatrics. (Tr. 2662).

The ALJ's decision to afford little weight to the opinion of Andrew Braunstein, D.O. is also supported by substantial evidence. The ALJ explained that Dr. Braunstein's letter appeared to be based on Claimant's subjective self-reports, there was no indication that a formal functional evaluation was performed, and the opinion was contradicted by substantial evidence in the record.[6] (Tr. 2661). Thus, the opinion of Dr. Braunstein was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 404.1527(c)(2), and was also inconsistent with substantial evidence in the record. The ALJ further discussed the factors above, noting: (1) Dr. Braunstein's role as an impartial medical expert, (2) Dr. Braunstein's lack of a longitudinal history with Claimant, (3) Dr. Braunstein's supporting treatment notes observed Claimant was only "mildly uncomfortable" and that Claimant's language and cognition was "normal," which was inconsistent with his finding that Claimant was disabled, (4) Dr. Braunstein's finding was inconsistent with substantial evidence as discussed above, and (5) Dr. Braunstein's position as a specialist in neurology. (Tr. 2661).

Accordingly, the ALJ's decision to afford little weight to the opinions of Dr. Lapp and Dr. Braunstein was proper because the opinions were inconsistent with other substantial evidence in the record and were properly weighed under the factors. As such, the ALJ's decision is supported by substantial evidence.

---

[6] Additionally, the ALJ raised concern regarding the note's authenticity because there "appeared to be different hand writings on the form," however, she noted that regardless of the authenticity, the opinion still warranted less weight. (Tr. 2661).

## IV. CONCLUSION

IT IS THEREFORE ORDERED that for the reasons above, Claimant's Motion for Summary Judgment, (Doc. No. 11), is DENIED; the Commissioner's Motion for Summary Judgment, (Doc. No. 14), is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: June 21, 2023

Frank D. Whitney
United States District Judge